**United States District Court**
**District of Rhode Island**

Michael J. Wheelock, Sr., Pro-Se :
:
vs. : C.A.No.2000-144T
:
State of Rhode Island, Rhode Island Department of Corrections (RIDOC); A.T.Wall, Director of the RIDOC; Walter Whitman, Warden of the Medium 1 Security Facility; Joseph Morocco, Medical Services Administrator; Fredrick Friedman, Director of Health and Rehabilitative Services for the State of RIDOC; Defendants, et.al. :

**MOTION FOR A**
**TEMPORARY RESTRAINING ORDER**

**[ Federal Rules of Civil Procedure Rule 65 ]**

Now comes the plaintiff, Michael J. Wheelock, Sr., Pro-Se, Requesting this Court to restrain the State of Rhode Island Department of Corrections, et.al., and all employees of, from ordering the plaintiff to produce witnessed urine specimens for drug testing purposes, do to the following reasons:

1. Plaintiff has been diagnosed with a Social Phobia; DSM IV 300.23. The inability to urinate in front of another person(referred to as Bashful Bladder Syndrome.) See attached Clinical Diagnosis.

2. Plaintiff was unable to produce urine specimens on two seperate occasions do to Bashful Bladder Syndrome, and has suffered irreparable harm and damages as a result of.

3. Plaintiff has enrolled in the Spectrum Substance Abuse Program. He is next on the waiting list and if restraining order is granted, will be attending in the beginning of November.

4. Plaintiff is not only seeking a restraining order in general, but do to the requirement of frequent urine testing while attending the program.

5. On October 6,2005, plaintiff requested the accommodation to give private urine samples for drug testing purposes. This request was made under the State of Rhode Island Department of Corrections Polilt: 18.07 DOC, and "The American With Disabilities Act of 1990."

6. Plaintiff's request for an accommodation has not been answered. See attached request,policy,and proof of service.

7. Plaintiff remains subjected to witnessed urine collection at any moments, and is in Fear of suffering further irreparable harm and damages.

Wherefore, the ends of Justice would best be served if this Honorable Court were to grant plaintiffs Motion for a Temporary Restarainig Order.

Respectfully Submitted

Michael J. Wheelock,Sr., Pro-Se
Inmate #74124 Medium 1 Security
John J. Moran Facility PO.Box8274
Cranston, Rhode Island 02920

A copy of this order and a copy of the complaint shall be served upon the defendant(s) forthwith.

Issued at_______am./pm. This_______day of____________,2005,AD.

Enter: By Order:

____________________ ____________________

Justice Clerk

**United States District Court**
**District of Rhode Island**

| | | |
|---|---|---|
| Michael J. Wheelock, Sr., Pro-Se<br><br>vs.<br><br>State of Rhode Island, Rhode Island Department of Corrections (RIDOC); A.T.Wall, Director of the RIDOC; Walter Whitman, Warden of the Medium 1 Security Facility; Joseph Morocco, Medical Services Administrator; Fredrick Friedman, Director of Health and Rehabilitative Services for the State of RIDOC; Defendants, et.al. | : | C.A.No.2000- 144T |

**TEMPORARY RESTRAINING ORDER**

In the above entitled cause it is so ORDERED that plaintiffs prayer(s.) for a Temporary Restraining Order be:

1. Plaintiff's prayer for a Temporary Restraining Order is granted.

2. The State of Rhode Island Department of Corrections, et.al., and all employees of are restrained from ordering the plaintiff to provide witnessed urine samples for drug testing purposes.

3. The plaintiff will consent to being strip-searched and given a specimen container and placed in a dry cell alone to provide a urine sample for drug testing purposes.

4. Other:______________________________________________
______________________________________________.

5. IT IS SO ORDERED.

A copy of this order and a copy of the complaint shall be served upon the defendant(s) forthwith.

Issued at______am./pm. This______day of__________,2005,AD.

Enter: ______________________ Justice

By Order: ______________________ Clerk

## Certification

[ 28 U.S.C. 1746 ]

I, Michael J. Wheelock,Sr., Pro-Se, hereby certify that on the 30th day of October , 2005, a true and accurate copies were sent via United States Postal Service to the Attorney Generals Office, 150 South Main Street, Providence, RI. 02903, and via State of Rhode Island Department of Corrections Interdepartmental Mail to A.T.Wall, Walter Whitman, Joseph Morocco, and Fredrick Friedman.

Michael J. Wheelock,Sr., Pro-Se
Inmate #74124 Medium 1 Security
John J. Moran Facility PO.Box8274
Cranston, Rhode Island 02920

**Request for an Accommodation to the Witnessed**

**Urine Collection Procedure for Drug Testing Purposes**

To: A.T.Wall, Director of the Rhode Island
Department of Corrections;
Walter Whitman, Warden of the
Medium 1 Security Facility;
Joseph Morocco, Medical
Services Administrator;
Fredrick Friedman, Director of
Rehabilitative Services;
et.al.

Re: Michael J. Wheelock,Sr., Inmate #74124,
Medium 1 Security Facility, PO.Box8274,
Cranston, Rhode Island 02920.

Date: October 6,2005.

**Request for an Accommodation Under the**

**State of Rhode Island Department of Corrections Policy: 18.07 DOC**

**and**

**" The American With Disabilities Act of 1990 "**

I am writting to inform you that I have enrolled in and currently on the waiting list for the 6-month Spectrum Substance Abuse Program at the Medium 1 Security Facility where I am housed.

As you are aware, this program has a requirement that you must provide frequent witnessed urine samples for drug testing.
Something I have difficulty doing and have been sanctioned for on two seperate occasions resulting the suffering of irreparable harm and damages.

I am providing you with a diagnosis of, specifically, DSM IV 300.23, the inability to urinate in front of another person (refered to as Bashful Bladder Syndrome). See attached diagnosis.

It is advised that drug screening include private urination from this date foreward. I await your response.

Respectfully Requested
Michael J. Wheelock,Sr.

affected housing module, in writing, when an inmate has a special need, limitation, or restriction.

The Superior Officer ensures the medical order:

1. is completed without delay;

2. is recorded in the housing module's log book; and

3. remains in effect until a written order to discontinue is received from the Warden.

4. A copy of the signed form is sent confidentially to the inmate via interdepartmental mail or is delivered to the dispensary for the inmate to pick up.

(K) Americans With Disabilities Act

1. Offenders with visibly obvious or documented disabilities covered under the Americans With Disabilities Act may request reasonable accommodations concerning program and facility access.

   a. Accommodations required by visibly obvious disabilities may be handled directly with custody staff.

   (b) Offenders seeking reasonable accommodation for claimed disabilities should follow the procedures outlined in Attachment 2 (07/29/98 memo from Corrections Director to Wardens of all facilities regarding requests from inmates under the ADA).

STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

Department of Corrections

George A. Vose, Jr.
*Director*

TO: WARDENS OF ALL FACILITIES

FROM: George A. Vose, Jr.
Director

SUBJECT: Requests By Inmates For Reasonable Accommodation Under the Americans With Disabilities Act (ADA)

DATE: July 29, 1998

As you know, the U. S. Supreme Court recently held that the ADA is applicable to prison inmates. Inmates with documented or visably-obvious disabilities now have the right to request reasonable accommodation concerning program and facility access. A committee has been appointed to make formal policy recommendations. In the interim, the following procedures will be followed with regard to reasonable accommodation:

1. Inmates seeking reasonable accommodation for a claimed disability may communicate a request to the warden of their facility, or his or her designee;

2. Inmate may speak with the Health Care Services staff in their facility for assistance in formulating a solution to their request;

3. If an inmate is dissatisfied with a recommended solution, he or she may address their concern to the Medical Services Administrator, Joseph Marocco;

4. Any decision by the Medical Services Administrator may be appealed directly to the Assistant Director for Rehabilitative Services;

5. Final review may be taken to the Office of the Director, specifically, Robert McCutcheon, Grievance Coordinator.

Please address all questions concerning this procedure to Mr. Cipriano at the Office of Legal Counsel.

cc: Jeffrey J. Laurie
Anne C. Spaulding, M.D.
Joseph R. Marocco
Robert McCutcheon

Michael J. Wheelock,Sr.
Inmate #74124
Medium 1 Security

Interdepartmental Mail

October6,2005

Director of Rehabilitative Services
Fredrick Friedman

---

Michael J. Wheelock,Sr.
Inmate #74124
Medium 1 Security

Interdepartmental Mail

October6,2005

Director A.T.Wall

Michael J. Wheelock,Sr.
Inmate #74124
Medium 1 Security

Interdepartmental Mail

October6,2005

**Medical Services Administrator**
**Joseph Morocco**

---

Michael J. Wheelock,Sr.
Inmate #74124
Medium 1 Security

Interdepartmental Mail

**October6,2005**

**Warden Walter Whitman**

**MICHAEL J. WHEELOCK, Sr., v. STATE OF RHODE ISLAND, et al.**

**C.A. No. 00 - 144 T**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND**

*2002 U.S. Dist. LEXIS 8630*

**April 8, 2002, Decided**

**DISPOSITION:** [*1] Magistrate judge recommended that plaintiff's motion for summary judgment be denied, defendants Wall, Fortin, Whitman, Hilterman, Ashton and Lapointe's motion for summary judgment be granted, and plaintiff's motion for contempt be denied.

**LexisNexis(R) Headnotes**

**COUNSEL:** Michael J. Wheelock SR, Plaintiff or Petitioner, Pro se.

For Defendant or Respondent: Patricia Anne Coyne - Fague, EsQ.

**JUDGES:** Jacob Hagopian, United States Magistrate Judge.

**OPINIONBY:** Jacob Hagopian

**OPINION:**

**Report and Recommendation**

Jacob Hagopian, United States Magistrate Judge

Michael J. Wheelock, Sr., *pro se*, filed a Complaint pursuant to *42 U.S.C. § 1983* alleging a violation of his Fourth Amendment rights. Plaintiff claims that the drug testing conducted at the Adult Correctional Institution, Cranston, Rhode Island, is an unreasonable infringement on his Fourth Amendment rights. Secondly, and separately, he contends that the manner in which the drug tests were conducted violated his Fourth Amendment rights. Plaintiff names as defendants the State of Rhode Island, the Rhode Island Attorney General's Office, the Rhode Island Department of Corrections("RIDOC"), A.T. Wall, Ann J. Fortin, Anne Spaulding, Marilyn Price, Walter [*2] Whitman, Roy Hilterman, Lt. Alves, Lt. Lapointe, Lt. McCaffery, and Leo Ashton.

The matter is currently before the Court on the following motions: (1) Plaintiff Michael Wheelock's motion for summary judgement; (2) defendants Wall, Fortin, Whitman, Hilterman, Ashton and Lapointe's motion for summary judgement, and (3) Plaintiff Wheelock's motion for contempt. For the reasons that follow, I recommend that plaintiff's motion for summary judgement be denied, defendants' motion for summary judgement be granted, and plaintiff's motion for contempt be denied.

**I. Summary Judgement Motions**

**A. Summary Judgment Standard**

Summary judgement's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug, Inc., 895 F.2d 46, 47 (1st Cir. 1990).* Summary judgement can only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56.* Summary judgement should be granted [*3] "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the ultimate burden of proof at trial." *Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).*

**B. Undisputed Facts**

Here, the undisputed facts are as follows:

Plaintiff Michael J. Wheelock, Sr., is an inmate incarcerated at the Adult Correctional Institution ("ACI"), Cranston, Rhode Island. On August 21, 1999, the plaintiff was chosen randomly to produce a urine sample for drug testing purposes. Plaintiff was directed to the prison hospital where he had to stand in line, awaiting the drug test. While waiting his turn to provide a sample, plaintiff

observed inmates in front of him producing samples and two correctional officers observing the procedures.

When it was the plaintiff's turn, he was order to stand over a 55-gallon garbage barrel, with a correctional officer on the opposite side, observing. While he was attempting to produce, other inmates were standing behind him, observing him from behind. The second correctional officer was located in the collection area. [*4] Plaintiff was unable to produce a urine sample.

After his inability to produce a urine sample, plaintiff was taken to a holding cell. Plaintiff attempted periodically to produce a urine sample, but he could not. Plaintiff asked to see a doctor, for more time, for water, and for a different test. His requests were not met. Since he did not produce a urine sample, plaintiff was placed in segregation and charged with a refusal to produce a urine sample, which carries the same consequences as a positive test result. Accordingly, plaintiff received disciplinary sanctions.

On December 15, 1999, plaintiff was again chosen randomly to produce a urine sample for drug testing purposes. Again, plaintiff could not so produce. Plaintiff consented to being strip - searched and placed in the area where the specimens are collected alone. However, four hours later, plaintiff still did not produce a urine sample. Plaintiff requested more time, more water, or a different test. His requests were denied, and he was charged with a disciplinary infraction for not producing a urine sample. He thereafter received sanctions.

### C. *42 U.S.C. § 1983*

Plaintiff has brought suit under [*5] *42 U.S.C. § 1983* alleging a violation of his Fourth Amendment rights. Section 1983 provides, in pertinent part:

> Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

*42 U.S.C. § 1983.*

In order to maintain a section 1983 action, the conduct complained must be committed by a "person" acting under color of state law and the conduct must have deprived the plaintiff of a constitutional right or a federal statutory right. *Gomez v. Toledo, 446 U.S. 635, 640, 100 S. Ct. 1920, 1923, 64 L. Ed. 2d 572 (1980);* see also, *Baker v. McCollan, 443 U.S. 137, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)* (constitutional deprivations); *Maine v. Thiboutot, 448 U.S. 1, 100 S. Ct. 2502, 65 L. Ed. 2d 555 (1980)* [*6] (statutory deprivations). Here, there is no dispute that the named defendants acted under the color of state law. However, the defendants assert that the undisputed facts demonstrate that plaintiff's Fourth Amendment rights were not violated. I agree.

### D. The Fourth Amendment

#### 1. Drug Testing Policies at the ACI.

Plaintiff contends that the drug testing policy at the ACI violates the Fourth Amendment in three respects. First, plaintiff contends that the drugs tests violate the Fourth Amendment because advance notice is not given to an inmate, and that inmates are selected randomly. Second, plaintiff contends that treating a failure to produce a urine sample as a positive test result is unreasonable. Lastly, plaintiff contends that the ACI should provided alternatives to urine drug testing. I reject his contentions.

The Fourth Amendment to the U.S. Constitution provides that individuals have the right to be free from the government's "unreasonable searches and seizures." U.S. CONST. amend. IV. The Fourth Amendment protects expectations of privacy. *Winston v. Lee, 470 U.S. 753, 105 S. Ct. 1611, 84 L. Ed. 2d 662(1985).* Though some diminution in privacy is to [*7] be expected in prison, see *Hudson v. Palmer, 468 U.S. 517, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984),* courts have held that inmates retain a constitutional right to bodily privacy. See *Hayes v. Marriott, 70 F.3d 1144 (10th Cir. 1995), Canedy v. Boardman, 16 F.3d 183 (7th Cir. 1994); Sepulveda v. Ramierz, 967 F.2d 1413 (9th Cir. 1992)*

A drug test constitutes a search for purposes of the Fourth Amendment and must be conducted in a reasonable manner. See *Spence v. Farrier, 807 F.2d 753, 755 (8th Cir. 1986).* In determining whether a search of a prisoner is reasonable, the court must "[balance] the significant and legitimate security interests of the institution against the privacy interests of the [prisoner], *Bell v. Wolfish, 441 U.S. 520, 560, 99 S. Ct. 1861, 1885, 60 L. Ed. 2d 447 (1979),* and give prison administrators wide ranging deference in [their] adoption and execution of policies and practices that in their judgement are needed to preserve internal order and discipline and to maintain institutional security." *Id. at 547.*

The unauthorized use of narcotics [*8] in a prison by inmates poses a serious threat to prison officials' ability to maintain institutional security. Cf. *Block v. Rutherford, 468 U.S. 576, 588-89, 104 S. Ct. 3227, 82 L. Ed. 2d 438(1984)*(indicating that the unauthorized use of drugs is a problem in many penal institutions). Accordingly, prison officials have a significant and legitimate interest in preventing unauthorized drug use among inmates. This Court has already found that urinalysis drug testing of prisoners at the ACI is a reasonable means of combating the unauthorized use of drugs, and does not violate the Fourth Amendment. See *Miller v. Moran, 1992 U.S. Dist. LEXIS 7586, 1992 WL 119131 (D.R.I. 1992).* I see no reason to alter this holding, and decline to do so today.

The fact that the test is given without advance notice and that inmates are selected randomly is of no moment. The random and unannounced testing of inmates is reasonable. *Lucero v. Gunter, 17 F.3d 1347, 1350 (7th Cir. 1994);* See also *Spence v. Farrier, 807 F.2d 753, 755 (8th Cir. 1986).* If drug tests were performed on a schedule, with notice of those selected in advance, the ability to detect drugs would be [*9] reduced, if not eliminated, thus frustrating the purpose of the testing.

Moreover, the policy of the ACI to treat those who do not produce a urine sample in a timely manner, here, after a four hour period, as testing positive for drug use, does not separately implicate plaintiff's Fourth Amendment rights. Once the search is deemed not to infringe upon the Fourth Amendment, the result for not submitting to the search - here timely producing the urine sample-does not further implicate the Fourth Amendment. Assuming *arguendo* that it did, treating the failure to produce a urine sample as a positive test for drugs is not an unreasonable policy. The prison has significant and legitimate interest in ensuring that inmates produce a urine sample. Without adverse consequence for not producing, there would be no incentive for inmates to comply with the drug testing program.

Lastly, Plaintiff contends that the ACI's policy of not providing alternatives to a urine testing, for example, a blood test, violates the Fourth Amendment. As I have already determined, the search, here, the urine drug testing, is a reasonable search. The ACI is under no obligation under the Fourth Amendment to provide [*10] drug testing alternatives to inmates.

Accordingly, no Fourth Amendment violation has been demonstrated with respect to the drug testing policies at the ACI. Thus, plaintiff's motion for summary judgement should be denied, and defendants' motion for summary judgement should be granted. I so recommend.

**2. The Manner in Which the Tests were Conducted on Plaintiff Wheelock.**

Plaintiff Wheelock next complains that the manner in which he was tested violated the Fourth Amendment. The undisputed facts demonstrate that the plaintiff had to stand in a line with other inmates. When it was plaintiff's turn to produce a urine sample, he was required to stand over a 55-gallon barrel. A correctional officer stood opposite the plaintiff to observe the collection procedure. Another correctional officer was also present in the collection room. Inmates stood in line, behind the plaintiff. The inmates had a view of the back of Wheelock while he attempted to produce a urine sample.

Here, there is no evidence that there were members of the opposite sex viewing plaintiff's attempted urination, and nor could other inmates directly see his attempts. See *Thompson v. Souza, 111 F.3d 694, 703 (9th Cir. 1997).* [*11] The presence of the two correctional officers, one directly viewing plaintiff's attempts and the other in the collection area, was reasonable to safeguard the integrity of the tests and to maintain control over the inmates. See id. Thus, the manner in which his tests were conducted was reasonable, and no violation of the Fourth Amendment occurred.

Accordingly, since the undisputed facts demonstrate that no violation of the Fourth Amendment occurred, plaintiff's motion for summary judgement should be denied, and defendant's motion for summary judgement should be granted. I so recommend.

**II. Plaintiff's Motion for Contempt.**

Plaintiff has filed with this Court a motion for contempt, due to the defendants' alleged failure to comply with an order of this Court, which granted Plaintiff's motion to compel discovery. In the instant motion, plaintiff contends that the Order was violated with respect to five requests. The requests and the defendants' responses are set forth below:

> **(A) Interrogatory Request # 6, propounded on defendant Wall. If an inmate was experiencing "stage fright" during the process of trying to produce a urine for urinalysis what safeguards** [*12] **are set up to ensure a drug free inmate is not punished?**
>
> Defendant's response: See answer to Question 4. [The response to Question 4 provided: Objection. Pursuant to a Report and Recommendation issued by the Court, Magistrate [Judge] n1 Hagopian, on May 15, 2001, Plaintiff's claims with regard to the disciplinary process and his disciplinary confinement were dismissed. The only remaining claim is Plaintiff's claim with regard to the 4th Amendment. This

request does not relate to the 4th Amendment claim made by Plaintiff.]

Defendant's further response, as ordered by the Court: Pursuant to RIDOC Policy # 9.36-2, effective August 31, 1998, in the event an inmate cannot produce a [urine] specimen at the moment the officer asks for one, the inmate will be given a four hour period in which to produce a specimen. During this period, the inmate is secured in an area where access to toilet facilities can be controlled. Drinking water is made available in an amount not to exceed eight (8) ounces.

**(B) Document Request 14. Any and all information on how the RIDOC deals with an inmate who finds himself unable to urinate in the view of the collecting officer.**

Defendants' [*13] Response: Objection. Pursuant to a Report and Recommendation issued by the Court, Magistrate [Judge] Hagopian, on May 15, 2001, all of Plaintiff's claims, except those that concern the 4th amendment, were dismissed. This request does not relate to the 4th amendment claim made by Plaintiff.

Defendants' Further Response as Ordered by the Court: Produced: RIDOC Policy # 9.36-2, effective August 31, 1998, which provides that in the event an inmate cannot produce a [urine] specimen at the moment the officer asks for one, the inmate will be given a four hour period in which to produce a specimen. During this period, the inmate is secured in an area where access to toilet facilities can be controlled. Drinking water is made available in an amount not to exceed eight (8) ounces.

**(C) Document Request 15: Any and all information on how the RIDOC deals with an inmate, who, with the medical condition of anxiety, cannot produce a urine for urinalysis.**

Defendants' Response: Objection. Pursuant to a Report and Recommendation issued by the Court, Magistrate [Judge] Hagopian, on May 15, 2001, all of Plaintiff's claims, except those that concern the 4th amendment, were dismissed. [*14] This request does not relate to the 4th amendment claim made by Plaintiff.

Defendants' Further Response as Ordered by the Court: Produced: RIDOC policy # 9.36-2, effective August 31, 1998, which provides that in the event an inmate cannot produce a [urine] specimen at the moment the officer asks for one, the inmate will be given a four hour period in which to produce a specimen. During this period, the inmate is secured in an area where access to toilet facilities can be controlled. Drinking water is made available in an amount not to exceed eight (8) ounces.

**(D) Inspection Request 1.** Complete audio recordings of the disciplinary hearings on 8-25-99 and 12-17-99.

Defendants' Response: Objection. Pursuant to a Report and Recommendation issued by the Court, Magistrate [Judge] Hagopian, on May 15, 2001, Plaintiff's claims with regard to the disciplinary process and his disciplinary confinement were dismissed. The only remaining claim is Plaintiff's claim with regard to the 4th Amendment. This request does not relate to the 4th Amendment claim made by Plaintiff.

Defendants' Further Response as Ordered by the Court: The Department of Corrections prohibits Maximum [*15] security inmates from possessing cassette tapes. They are considered to be contraband, as cassette players are prohibited. Therefore, in lieu of providing the actual [tapes], counsel for the defendant submits that she will work with the Deputy Warden of the Maximum security facility to set up a time for plaintiff to listen to the tapes under supervision. n2

**(E) Additional Request # 1.** Copies of all urinalysis log records from August 21, 1999 to present, that pertain to Michael Wheelock, Sr., # 074124, which state the time and the testing procedure started and the actual time the specimen was given.

Defendants' Response: No response given by RIDOC.

Defendants' Further Response: Wheelock did not give a specimen. Because no

specimen was given, there was no "chain of custody" log created. Therefore, the disciplinary report written by the officer is the only record of the fact that the request was made four hours prior to Mr. Wheelock being booked for a refusal. According to the officer's report, the testing procedure started at 4:00 p.m. Wheelock still had not provided a sample at 8:15 p.m., according to the officer's report. The report has been provided in response [*16] to [another discovery request].

n1 The Court draws defense counsel's attention to Pub.L. 101-650, 104 Stat. 5089 (1990). There, Congress abolished the magistrate and created the magistrate judge. See Pub.L. 101-650, 104 Stat. 5089 (1990). Thus, the proper title when referring to this writer is "magistrate judge."

n2 The Court notes that the Plaintiff has listened to the tapes on one occasion. Plaintiff has been given the opportunity to listen to them as many times as he desires. See Defendants' Memorandum in Opposition to Plaintiff's Motion for Contempt, at 2 - 3.

Here, Defendants properly provided further answers to plaintiff's requests and have permitted the plaintiff to listen to the disciplinary tapes. Thus, they have substantially complied with the Court's Order. Accordingly, plaintiff's motion for contempt should be denied. I so recommend.

***Conclusion***

Accordingly, for the reasons stated above, I recommend that plaintiff's motion for summary judgement be denied, defendants Wall, [*17] Fortin, Whitman, Hilterman, Ashton and Lapointe's motion for summary judgement be granted, and plaintiff's motion for contempt be denied. Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten days of its receipt. *Fed.R.Civ.P. 72(b)*; Local Rule 32. Failure to file timely, specific objections to this report constitutes waiver of both the right to review by the district court and the right to appeal the district court's decision. *United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986)*(per curiam); *Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980).*

Jacob Hagopian
United States Magistrate Judge
April 8, 2002

Inmate for Urinalysis Form, Attachment 1, section entitled "Other/Comments".)

e. Testing of Inmates in Treatment:

(1) All inmates participating in the Department's substance abuse treatment programs are subject to urinalysis testing.

(2) Inmates in substance abuse treatment programs are tested weekly for a 6-month period and at least twice (2) monthly thereafter until successful completion of the treatment program.

(3) Treatment programs include individual counseling, group counseling, education sessions, and intensive residential treatment.

(4) Inmates are also subject to random substance abuse testing.

(5) Inmates are also subject to testing for cause (reasonable suspicion exists that inmate is under influence of drugs and/or alcohol).

2. Collection of Samples:

a. A Superior Officer or designee identifies an area and/or individual(s) to be tested using the criteria set forth above. The Correctional Officer ("Collecting Officer") observes proper procedures in collecting the urine sample(s) to insure the integrity and validity of the results.

b. The Collecting Officer thoroughly searches the inmate(s) before collecting the specimen(s) to insure the absence of hidden containers or other contraband that may negate a valid test. The Collecting Officer uses a label on the collection container for identification purposes.

c. The Collecting Officer informs the inmate that if s/he cannot produce a specimen at that moment, s/he will be given a 4-hour period in which to produce a specimen. During this period, the inmate is secured in an area where access to toilet facilities can be controlled. Drinking water is made available in an amount not to exceed eight (8) ounces. An inmate's failure to provide a specimen within this time limit is considered a failure to provide

a specimen, and disciplinary action is taken. The Discipline Board treats a failure as equal to a dirty urine.

d. The Collecting Officer requires the inmate to wash and dry his/her hands immediately before providing the specimen.

e. The specimen is collected in an area which affords the inmate privacy. However, the Collecting Officer (who is of the same sex as the inmate) witnesses the actual passage of the specimen into the container.

f. Depending on the facility, one of two methods is followed to code the urine specimen:

(1) If the Collecting Officer codes the urine specimen:

(a) The Collecting Officer receiving the urine container from the inmate labels it with a predetermined code number obtained from the facility's Urine Screen Coordinator. This code number is assigned to a specimen to prevent the tester from identifying the inmate. The coding system is devised as follows:

The facility identifier [see (2) (b) below], the year in two digits, a 4-digit number starting at 0000, running consecutively. Example: 1940001 (1 = High Security; 94 = Year; 0001 = Specimen Number). The 4-digit numbers return to 0000 with each new year.

(b) The Collecting Officer initiates the Selection of Inmate for Urinalysis Form (Attachment 1) showing to whom the specimen belongs, the date and time collected, and by whom.

**If the inmate indicates s/he is currently taking medication, the type of medication is listed on Selection of Inmate for Urinalysis Form, Attachment 1 (see #10).**

(c) Finally, the Collecting Officer notes the code number assigned to the specimen in the upper right hand corner of Attachment 1.

## Certification

[ 28 U.S.C. 1746 ]

I, Michael J. Wheelock,Sr., Pro-Se, hereby certify that on the 30th day of October , 2005, a true and accurate copies were sent via United States Postal Service to the Attorney Generals Office, 150 South Main Street, Providence, RI. 02903, and via State of Rhode Island Department of Corrections Interdepartmental Mail to A.T.Wall, Walter Whitman, Joseph Morocco, and Fredrick Friedman.

Michael J. Wheelock,Sr., Pro-Se
Inmate #74124 Medium 1 Security
John J. Moran Facility PO.Box8274
Cranston, Rhode Island 02920